BILLINGS & CO., INC.

v.

**PINE STREET REALTY ASSOCIATES LIMITED PARTNERSHIP.**

Civ. A. No. 90–0326 P.

United States District Court,
D. Rhode Island.

Dec. 19, 1990.

Robert Corrente, Providence, R.I., for plaintiff.

Mary K. Miluski, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

In this breach of contract action, the Court must resolve a motion for summary judgment filed by the plaintiff pursuant to Fed.R.Civ.P. 56, as well as the defendant's motion to dismiss the complaint, Fed.R. Civ.P. 12(b)(1), (2) and (6). For reasons which follow, both of the aforesaid motions are denied.

## I.  Facts

As a prologue to a recitation of the factual setting, I find that the "concise statement[s] of all material facts . . .," disputed and undisputed, required by Local Rule 12.1, in the form as filed by the litigants, lack all the necessary information for determination of the summary judgment motion; the same is, therefore, denied.  For lack of supporting law, the motion to dismiss is likewise denied.

The question posed by this case is whether or not the plaintiff did, in fact, "find" the investor, Drexel, Burnham & Lambert, who purchased, on terms "acceptable to" the defendant, certain investment tax credits in a historic building owned and being developed and rehabilitated by the defendant.  The litigants entered into a contract, the pertinent part of which reads:

> Billings and Co. will present the availability of the investment tax credit associated with completion of this building to several bulk ITC purchasers.  If we introduce the investment opportunity to an investor willing and able to purchase on terms acceptable to you, we will have earned a finders fee of Fifty Thousand ($50,000) Dollars which fee will be due and payable at closing of the sale.

The defendant states in its memorandum that the plaintiff, Billings, "mentioned certain investors to Pine Street Realty Trust [but that] none of these investors purchased the interest from Pine Street." Billings then merely gave the defendant the name of Joel Friedman who, when contacted by the defendant, was found not to be an investor or purchaser.  However, Mr. Friedman offered to "identify" potential investors in exchange for "a fee of $42,-700;" the defendant paid him this sum and in turn was introduced to Drexel who did consummate the desired investment.

The plaintiff asserts that it performed "its end of the contract by introducing the *opportunity* to Drexel, Burnham & Lambert ("Drexel") through an attorney in Springfield, Massachusetts who represented Drexel. . . ." (emphasis added).  I assume this attorney was Mr. Friedman. These allegations raise, but fail to address,

a number of relevant issues. This Court is left in the dark as to any revelations Billings made to the defendant concerning Mr. Friedman and what role Mr. Friedman was to play in the course of these dealings. Was he referred as another independent broker or agent who might find an investor; was he referred as the investor; did Billings advise Friedman and the defendant that it would rest on its contract if Friedman or anyone else through Friedman made an investment; was there an understanding, implied or otherwise, that Friedman would act independently or jointly with Billings? If Billings did, for some reason, merely give Friedman's name to the defendant, who was acting as the finder or broker? What does the plaintiff mean when it states it introduced "the opportunity" to the defendant? Did Billings know Friedman was Drexel's attorney, and did Friedman know about what was transpiring between Friedman, Drexel and Pine Street Realty Associates?

The full scenario must be played out to the last act before Billings' entitlement to a fee can be decided.

### II. Limited Partnership

■ Pine Street Realty Associates is a limited partnership. The defendant argues "Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity to sue or be sued is determined by the law of the forum state.... Under Rhode Island law, a partnership cannot sue or be sued in its own name. *See Nathanson v. Spitz*, 19 R.I. 70, 31 A. 690 (1895)." On the strength of this case, he concludes that this Court does not have personal jurisdiction over the defendant.

R.I.G.L. 7–13–1(7) defines a limited partnership as "a partnership formed by two (2) or more persons under the laws of this state and having one or more general partners and one or more limited partners." A partnership is "an association of two (2) or more persons to carry on as co-owners a business for profit." R.I.G.L. 7–12–17. A limited partnership, therefore, is one consisting of general and limited partners who have joined together to conduct a business for profit. "The main purpose of limited

partnerships is to permit a form of business enterprise, other than a corporation, in which persons can invest money without becoming liable for the debts of the firm, affording the limited partner a position analogous to that of a corporate shareholder, provided he does not hold himself out as a general partner or participate actively in the business." 59A Am.Jur.2d *Partnership* § 1240 (citing *Partnership Equities, Inc. v. Marten*, 15 Mass.App. 42, 443 N.E.2d 134 (1982)). The limited partnership, therefore, is a hybrid. The form gives limited partners the ability to shield themselves from liability as "corporate stockholders" and yet the business maintains the flexibility allowed to a partnership.

The question before this Court is one which has not been directly addressed by Rhode Island courts since 1895. That question is whether a limited partnership can be sued as an entity in Rhode Island. I cannot rely on the 1895 precedent, *Nathanson v. Spitz, supra,* for the proposition that a limited partnership cannot sue or be sued, because that case was decided under the old common law of partnerships. The common law rule was that a "partnership cannot sue or be sued in its partnership name because it has no identity apart from its members and is not a person, either natural or artificial." *Malibu Partners, Ltd. v. Schooley*, 372 So.2d 179 (Fla.App. 1979). Since the time of the *Nathanson* decision, *supra,* the Rhode Island Legislature adopted what is essentially the Revised Uniform Limited Partnership Act, now codified as R.I.G.L. 7–13–1 *et seq.*

R.I.G.L. 7–13–4 seems to indicate that limited partnerships can be sued in Rhode Island. The statute states:

Each limited partnership shall continuously maintain in this state: * * *

(2) an agent for service or process on the limited partnership, which agent must be an individual resident of this state, a domestic corporation, or a foreign corporation authorized to do business in this state.

If limited partnerships could not be sued in Rhode Island, what would be the purpose

of designating an agent for service? Moreover, this statute indicates that the Rhode Island Legislature intended to treat limited partnerships like corporations, as separate entities, for the purpose of litigation. R.I. G.L. 7–1.1–13 deals with service of process on a corporation. That statute indicates that a corporation must maintain a registered agent in this state "upon whom any process, notice or demand ... may be served." There is no doubt that corporations can be sued in Rhode Island; this Court believes that the statutes here cited indicate that limited partnerships can also be sued as separate entities.

To support this interpretation of legislative intent, I would point to other evidence on this issue. There is no recent case law directly on point; however, there is circumstantial evidence which points to the proposition that limited partnerships can, in fact, be sued in Rhode Island. This circumstantial evidence consists of cases, in Rhode Island, where either the plaintiffs or the defendants are limited partnerships. *See Jones v. Rommell*, 521 A.2d 543 (R.I.1987) (Mill Street Partners, a limited partnership, was a plaintiff); *Mendonsa v. Corey*, 495 A.2d 257, 259 (R.I.1985) (Fieldstone Properties, a limited partnership, was one of the applicant/respondents). The fact that these cases exist would seem to contradict, at least circumstantially, the proposition that limited partnerships cannot be sued in Rhode Island.

I must, therefore, conclude based on my interpretation of the Rhode Island Limited Partnership Act and on the circumstantial evidence from Rhode Island State Courts that limited partnerships can, in fact, be sued in Rhode Island. The defendant's motion to dismiss on the theory that a limited partnership cannot be sued is hereby denied.

### III. Jurisdictional Amount

The complaint reads that "Billings demands judgment against PSRA [Pine Street Realty Associates] in the sum of $50,000, plus interest, costs and attorney's fees pursuant to R.I.G.L. 9–1–45."

28 U.S.C. § 1332 reads:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy *exceeds* the sum or value of $50,000, *exclusive of interests and costs....* (emphasis added).

R.I.G.L. 9–1–45 reads:

*Attorney's fee*—The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract *in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party.* (emphasis added).

The question is whether or not the claim for attorney's fees pushes this case across the jurisdictional threshold amount. In *Velez v. Crown Life Insurance*, 599 F.2d 471, 474 (1st Cir.1979), the Court of Appeals for this Circuit teaches that attorney's fees are properly included in determining the sufficiency of the requisite jurisdictional amount. It stated that

[a]s a general rule, attorney's fees are excludable in determining the matter in controversy ... [t]here are, however, two logical exceptions to this rule: one, where the fees are provided for by contract, and, two, *where a statute mandates or allows the payment of such fees* [citing *Missouri State Life Insurance Co. v. Jones*, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933), plus several other cases].

*See also*, as cited by the plaintiff, *Martin v. Granite City Steel Corp.*, 596 F.Supp. 293 (S.D.Ill.1984) ("[w]hen applicable substantive law makes the award of attorney's fees discretionary ... [a claim of attorney's fees] makes the requested fee part of the amount in controversy"). *Id.* at 296.

Now it may be argued that an award for attorney's fees is far from a certainty under Rhode Island law; such compensation is not payable unless the court finds "that there was a complete absence of a justiciable issue of either law or fact raised by the losing party." How certain, then, must an award be to justify its inclusion in the determination of the jurisdictional amount? The inclusion in the determination of the jurisdictional amount? The "complete absence of a justiciable issue of either law or fact," in some cases, can be determined on

**14**

the pleadings; in others, it is a question of fact which requires a hearing on the merits. It seems to me, therefore, that in Rhode Island, unless a court can, on the basis of the pleadings, find the complaint or the opposition thereto completely meritless, the requested award must be added to the principal sum in deciding whether jurisdiction should be retained. In this controversy, because of the many facts to be determined, only an evidentiary hearing can resolve the merit for or against the claim for a fifty thousand ($50,000) dollar "broker's" fee. This Court cannot, at this time, say with any certainty that either the complaint or opposition are completely lacking in merit. I, therefore, conclude that the prayer in the complaint for attorney's fees should be added to the *ad damnum;* the requisite amount for jurisdiction to vest in this Court is, thereby, satisfied.

The remaining issues in the case, whether or not Pine Street Realty Trust is the proper party and not the defendant, Pine Street Realty Associates Limited Partnership ("PSRA"), and whether or not attorney Friedman acted as special counsel to PSRA and not as a broker, require a factual predicate for an ultimate decision following a trial.

It is, therefore, ordered that plaintiff's motion for summary judgment and defendant's motion to dismiss are denied.