# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1297

_____

| | | |
|---|---|---|
| Jean A. Stanko, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the |
| v. | * | United States Tax Court. |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 13, 1999

Filed: April 20, 2000

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and MELLOY,* District
Judge.

_____

LOKEN, Circuit Judge.

This case raises novel and difficult questions concerning transferee liability under
the Internal Revenue Code. The transferee, Jean Stanko, appeals the Tax Court's
determination that she is liable for $3,442,874 in unpaid taxes owed by Stanko Packing,
Inc. ("Stanko Packing"), because she is the successor transferee of an installment note
fraudulently conveyed by Stanko Packing to its sole shareholder, Jean's former spouse,

_____

*The HONORABLE MICHAEL J. MELLOY, United States District Judge for
the Northern District of Iowa, sitting by designation.

Rudy Stanko. We agree Jean is liable as successor transferee, but we conclude the Tax Court miscalculated the amount of her transferee liability under Nebraska law. Accordingly, we reverse and remand.

Rudy Stanko founded Stanko Packing in 1974. At all relevant times, he was its president and sole shareholder. In April 1984, Rudy was indicted for violations of the Federal Meat Inspection Act. As a result of these activities, Stanko Packing faced the revocation of its meat inspection license. In June 1984, Stanko Packing adopted a plan of liquidation, filed a Statement of Intent to Dissolve with the Nebraska Secretary of State, and sold the majority of its assets to Packerland Packing Company for $3,900,000. Stanko Packing received $900,000 in cash and a $3,000,000 five-year installment note bearing 11.5 percent interest ("the Packerland Note").

On September 17, 1984 (three days after Rudy's conviction for Meat Inspection Act violations), Stanko Packing transferred the Packerland Note and other assets to Rudy. Those transfers left Stanko Packing insolvent. On September 19, Rudy transferred the Packerland Note to his wife, Jean. Rudy filed for divorce in July 1985, the same month Jean received her first installment payment on the Packerland Note. The Stankos were divorced in July 1986. The decree awarded Jean no property, maintenance, or child support, and one dollar in alimony. Jean held the Packerland Note until maturity in 1989, receiving installment payments totaling $4,101,779.86. As each installment payment was received, Jean paid the deferred capital gains taxes that Rudy would have paid as a result of Stanko Packing's asset sale and liquidation.

Stanko Packing dissolved in June 1985. It realized substantial taxable income in its final year of operation, primarily deferred taxes on prior export sales. But Stanko Packing did not file the income tax return for this period that was due in September 1985, and it has never paid either the tax deficiency or the substantial additions to tax (penalties and interest) that are now owing. The Commissioner computed the tax and additions to tax and assessed this deficiency against Rudy as transferee of over

$6,000,000 of Stanko Packing assets. Rudy petitioned the Tax Court to redetermine this deficiency. When he failed to appear for trial, the Tax Court held him liable by default, and the Ninth Circuit affirmed. See Stanko v. Commissioner, T.C. Mem. 1993-513, aff'd per curiam, 42 F.3d 1402 (9th Cir. 1994).

In August 1991, the Commissioner sent Jean a notice that she is liable as transferee for Stanko Packing's unpaid deficiency based upon her receipt of the Packerland Note from Rudy in September 1984. Jean, too, petitioned the Tax Court to redetermine the alleged deficiency. Jean's case was tried after Rudy's transferee liability was upheld on appeal. In December 1996, the Tax Court upheld the Commissioner's determination of transferee liability, concluding that Rudy conveyed the note to Jean with actual intent to defraud creditors, that Jean did not give adequate consideration, and that the note had a fair market value of $2,806,979 on the day Jean received it. Almost two years later, the Tax Court adopted the Commissioner's computation of transferee liability and entered judgment against Jean in the amount of $3,442,874. Jean now appeals.

## I. Transferee Liability.

In a variety of situations, such as a corporate merger or an individual inheritance, the Commissioner may collect unpaid income taxes from a person to whom the taxpayer transferred assets. Section 6901 of the Code authorizes the Commissioner to assess and collect taxes from a transferee "in the same manner and subject to the same provisions and limitations" as from the taxpayer who initially incurred the tax liability. 26 U.S.C. § 6901(a). However, § 6901 is procedural; state law governs the extent to which a transferee is liable for the transferor's taxes. See Commissioner v. Stern, 357 U.S. 39 (1958). In this case, the Commissioner asserts that Jean Stanko is liable for Stanko Packing's unpaid income tax liability under the Nebraska law of fraudulent conveyances. Though the Tax Court recognized that this is the governing substantive

law, it misapplied this law in a number of respects, errors of law that we review *de novo* and that complicate our resolution of the issues raised on appeal.

## II. Was There a Fraudulent Conveyance?

In general, the law of fraudulent conveyances permits an injured creditor to set aside a transfer of assets by the debtor made with actual or constructive intent to defraud one or more creditors. See 37 AM. JUR. 2D *Fraudulent Conveyances* § 1 (1968). At the time in question, Nebraska had enacted the Uniform Fraudulent Conveyance Act. See Neb. Rev. Stat. §§ 36-601-13 (1988).[1] These statutes provided:

> **§ 36-604.** Every conveyance made . . . by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his or her actual intent if the conveyance is made . . . without a fair consideration.

> **§ 36-609(1).** Where a conveyance . . . is fraudulent as to a creditor, such creditor, when his or her claim has matured, may, *as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase* . . . (b) Disregard the conveyance and attach or levy execution upon the property conveyed.

(Emphasis added.)

The Tax Court concluded that Jean Stanko is liable as a successor transferee because Rudy transferred the Packerland Note to Jean with actual intent to defraud creditors. Jean attacks that finding of fraudulent intent. We conclude the question is

---

[1]In 1989, Nebraska replaced this statute with its version of the Uniform Fraudulent Transfer Act. See Neb. Rev. Stat. §§ 36-701-12. However, the new statute does not apply retroactively to conveyances made prior to its enactment. See Schall v. Anderson's Implement, Inc., 484 N.W.2d 86, 89-90 (1992).

irrelevant. Stanko Packing is the debtor/taxpayer, and the Commissioner is the injured creditor. If the transfer of the Packerland Note *from Stanko Packing to Rudy* was a fraudulent conveyance -- and Jean concedes that it was, since Rudy gave no consideration and the plan of liquidation necessarily rendered Stanko Packing insolvent -- then § 36-609(1)(b) empowers the Commissioner to levy and execute against this fraudulently conveyed asset in the hands of Jean as successor transferee, unless Jean is "a purchaser for fair consideration without knowledge of the fraud." Thus, the only questions we need address on appeal are whether Jean gave fair consideration for the note, and if not, whether the Tax Court properly calculated her transferee liability.[2]

### III.  Did Jean Give Fair Consideration?

Jean first argues that she gave fair consideration for the Packerland Note by forgoing claims for alimony, child support, and her share of the marital property during the Stankos' subsequent divorce proceedings. We disagree. Satisfying an existing or antecedent debt may be fair consideration. See Neb. Rev. Stat. § 36-603 (1988). However, Rudy did not file for divorce for almost a year after conveying the note to Jean, and there is no evidence Jean promised to give up divorce-related claims in exchange for the note. In September 1984, Rudy was facing time in prison and had an obligation to provide support for his children. See Neb. Rev. Stat. § 43-1402. But there is no evidence Jean undertook to discharge Rudy's financial obligations to their children in exchange for the note, and indeed Jean herself was jointly liable to provide support regardless of the conveyance. Cf. Brown v. Borland, 432 N.W.2d 13, 17 (Neb. 1988). Thus, this case bears no resemblance to Bruce v. Dean, 140 S.E. 277 (Va.

---

[2]In our view, there can be no doubt Jean Stanko is a "transferee" for purposes of 26 U.S.C. § 6901. The statute does not define the term except to clarify that it includes a "donee, heir, legatee, devisee, and distributee." § 6901(h). Stern held that state law governs. Therefore, the Commissioner may proceed under § 6901 against *any* "transferee" who is liable under state law for the debts of the transferor/taxpayer.

1927), where a father facing life in prison conveyed all his assets to a school in exchange for its more valuable promise to care for and educate his children.

Jean further argues that she gave fair consideration by assuming Rudy's liability to pay capital gains taxes as payments on the installment note were received. The Packerland Note was an installment obligation. When an installment obligation is transferred between spouses, "the same tax treatment . . . shall apply to the transferee as would have applied to the transferor." 26 U.S.C. § 453B(g)(2). In other words, once the note passed to Jean, she acquired Rudy's capital gains tax liability by operation of law. As we discuss in the next section of this opinion, that liability affected the value of the note in Jean's hands, but it was not fair consideration.

For these reasons, we agree with the Tax Court that Jean Stanko did not give fair consideration when she received the Packerland Note from Rudy in September 1984. Accordingly, the Commissioner may proceed against Jean as successor transferee to recover the value of an asset that was fraudulently conveyed by the taxpayer, Stanko Packing.[3] The remaining question -- and the most difficult part of the case -- is to determine the proper amount of Jean's transferee liability fifteen years after the conveyances in question.

---

[3]Jean further argues the Commissioner may not proceed against her because there was no reasonable effort to collect the unpaid taxes from her transferor, Rudy. The Commissioner responds that there must be a prior effort to collect from the taxpayer, Stanko Packing, but not from another transferee. As to a successor transferee, this is an open question (whether governed by Nebraska or by federal law). We need not resolve it, because the Commissioner's extensive litigation over Rudy's transferee liability was clearly a reasonable effort to collect from Jean's transferor.

## IV. The Amount of Transferee Liability.

As a general rule in fraudulent conveyance cases, "a creditor may recover judgment for the value of the asset transferred or the amount necessary to satisfy the creditor's claim, whichever is less." Eli's, Inc. v. Lemen, 591 N.W.2d 543, 556 (Neb. 1999).[4] Accordingly, the starting point in determining Jean Stanko's transferee liability is the fair market value of the Packerland Note on the day it was transferred to Jean, September 19, 1984. Accepting the opinion of the Commissioner's expert, the Tax Court found that the note had a fair market value of $2,806,979 on that day. Jean argues the tax court incorrectly valued the note. We agree.

The Commissioner's expert valued the note by what a willing buyer would have paid for it on September 19, 1984. That is the proper approach to valuation. See United States v. Cartwright, 411 U.S. 546, 551 (1973). But the expert gave no consideration to the deferred capital gains taxes that accompanied the note as a result of Stanko Packing's prior asset sale and liquidation. This has a substantial effect on valuation. Jean Stanko reported on her individual income tax returns the following amounts of taxable "long-term gain from installment sales" over the life of the note:

| | |
|---|---|
| 1985 | $ 187,668 |
| 1986 | $ 488,660 |
| 1987 | $ 547,920 |
| 1988 | $ 781,741 |
| 1989 | $ 499,060 |

---

[4]Eli's, Inc. was decided under the subsequently-enacted Nebraska Uniform Fraudulent Transfer Act. However, the principle is universally recognized, and we have no doubt the Supreme Court of Nebraska would have applied it under the Uniform Fraudulent Conveyance Act as well. See 37 AM. JUR. 2D *Fraudulent Conveyances* § 167; 14 MERTENS LAW OF FEDERAL INCOME TAXATION § 53.37 (2000).

Had Rudy sold the installment note to a third party, then the total deferred capital gain imbedded in the note would have been immediately realized. See 26 U.S.C. § 453B(a). If Rudy as seller paid the resulting capital gains tax, the buyer would no doubt have been willing to pay the fair market value of the note as calculated by the Commissioner's expert. But as we have explained, when an installment obligation is transferred between spouses, the imbedded tax liability continues to be deferred but accompanies the note to the transferee. Obviously, if a third party could purchase the note *on these terms* (which the Code does not allow), he or she would pay only the fair market value of the right to principal and interest reflected by the note, *minus* the capital gains taxes that must be paid when future payments on the note are received. That net amount was the fair market value of the note to Jean as transferee on the date of transfer.[5] The Tax Court erred in concluding otherwise.

Because the Tax Court seriously overvalued the Packerland Note, we must remand for recalculation of Jean Stanko's transferee liability. Before remanding, there are other valuation questions that deserve a closer look. The Tax Court held Jean liable as transferee for $3,442,874, including interest to August 7, 1991, the date she was sent a notice of transferee liability. The Court did not explain why it assessed transferee liability in excess of $2,806,979, its (erroneous) valuation of the transferred asset. The Commissioner argues that Jean as transferee is liable "for the full amount of Stanko Packing's liability plus interest from September 15, 1985, the due date of Stanko Packing's return," so long as the note was worth more than the tax liability plus additions to tax on September 19, 1984. The Commissioner does not even attempt to

---

[5]Stated differently, Jean as transferee should not be in a worse position than if she had not been given the note. She paid capital gains tax as she received installment payments on the note. If she now must disgorge the full facial fair-market value of the note, she will have paid more to the Commissioner as creditor than she received from Rudy. That is improper. See United States v. Brown, 86 F.2d 798 (6th Cir. 1936); 14 MERTENS § 53.37, at 101-02.

justify this proposition under Nebraska fraudulent conveyance law.  We conclude the proposition is unsound.

The Commissioner's Computation Statement calculating Jean's transferee tax liability, on which the Tax Court relied without discussion, reflects the following:

| | |
|---|---:|
| Deficiency in income tax | $1,224,726 |
| Penalty for failure to file a return | 298,746 |
| 5% negligence underpayment penalty | 61,236 |
| 50% negligence underpayment penalty | 335,826[6] |
| Failure to pay estimated tax penalty | 76,747 |
| Interest on tax and penalties, 9/15/85 to 1/20/90[7] | 839,439 |
| Interest, 1/20/90 to 8/7/91 | 606,154 |
| | _____ |
| Liability to be assessed | $3,442,874 |

This Statement reveals that much of Stanko Packing's unpaid tax liability was incurred after its fraudulent conveyance of the Packerland Note.  It is well settled in Nebraska that, "[a] creditor whose debt did not exist at the date of the voluntary conveyance by the debtor cannot have the conveyance declared fraudulent unless he pleads and proves that the conveyance was made to defraud subsequent creditors whose debts were in contemplation at the time."  United States Nat'l Bank v. Rupe, 296 N.W.2d 474, 476 (Neb. 1980), quoting First Nat'l Bank v. Bunn, 241 N.W.2d 127, 129 (Neb. 1976).

_____

[6]This penalty under § 6653(a)(2) of the Code was not added to Rudy Stanko's assessed transferee liability.  The Commissioner does not explain why Jean Stanko's transferee liability should be greater than her transferor's, which seems grossly unfair as well as contrary to Nebraska law.  Cf. Caulfield v. Commissioner, 33 F.3d 991, 994 & n.4 (8th Cir.1994), cert. denied, 514 U.S. 1016 (1995).

[7]The Commissioner does not explain the significance of this date.  It appears to be irrelevant under Nebraska law.

The Commissioner made no attempt to prove that the transfer of the Packerland Note from Stanko Packing to Rudy (a partial liquidating distribution to the company's only shareholder) was made to defraud subsequent, contemplated creditors. Therefore, the Commissioner's claim against Jean as successor transferee is limited to debts in existence at the time of the fraudulent conveyance.

In general, a transferee is liable under § 6901 for the transferor's unpaid taxes and additions to tax in the year of the transfer. See Mizrahi v. Commissioner, 63 T.C.M. (CCH) 2657 (1992). But we are not aware of any case applying this principle to a fraudulent conveyance transferee. Because income taxes are paid annually, some months after the end of the tax year, it is logical to consider unpaid taxes in the year of the transfer part of the transferor's existing tax debt. But penalties for negligent or intentional misconduct by the transferor that occurred many months after the transfer, such as penalties for failure to file a return and for substantial underpayment of the year-end tax liability, are not, by any stretch of the imagination, existing at the time of the transfer. To recover these penalties from a fraudulent conveyance transferee, the Commissioner must prove that the transfer was made with intent to defraud future creditors. (By contrast, the penalty for failure to pay estimated taxes in the year of the transfer is based upon conduct during that year and therefore is part of the taxpayer/transferor's existing debt.) Thus, the penalty for Stanko Packing's failure to file a return and the two negligence penalties (a total of $695,808) are not part of the Commissioner's transferee claim against Jean.

The Commissioner assessed Jean as transferee for all interest owed by Stanko Packing on its unpaid tax liability between September 1985 and August 1991, the day Jean received a notice of transferee liability. This part of the assessment is similarly flawed, for we find nothing in Nebraska fraudulent conveyance law allowing such a recovery of interest. Under the new Uniform Fraudulent Transfer Act, the creditor is limited to recovering "the value of the asset at the time of the transfer, *subject to adjustment as the equities may require.*" Neb. Rev. Stat. § 36-709(c) (emphasis

-10-

added). The prior statute and case law are silent on the issue. Because the delay in recovering from the transferee that occurred before the Commissioner assessed transferee liability is attributable to the Commissioner (absent proof of transferee deceit), we conclude the equities do not require an award of interest for that period. Therefore, Nebraska law does not permit such an award. (On the other hand, the question of prejudgment interest after the date of the Commissioner's notice of transferee liability to Jean may well be a matter of federal law. That issue is not addressed in the Tax Court's judgment, and we do not consider it.)

### Conclusion.

The judgment of the Tax Court is reversed. The case is remanded for recalculation of the value of the Packerland Note on September 19, 1984, in accordance with this opinion. Jean Stanko's transferee liability under Nebraska law will then be the lesser of that value or $1,301,473, the amount of the Commissioner's then-existing claim.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.