# United States Court of Appeals
## For the First Circuit

No. 05-1950

UNITED STATES,

Plaintiff, Appellee,

v.

ROSALINA VERDUCHI; DENNIS VERDUCHI,

Defendants, Appellants,

OPTION ONE MORTGAGE CORPORATION,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. Ernest C. Torres, Chief U.S. District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Brent R. Canning, with whom Hinckley, Allen & Snyder LLP
was on brief, for appellants.
Robert J. Branman, Attorney, Tax Division, Department of
Justice, with whom Eileen J. O'Connor, Assistant Attorney General,
and Bruce R. Ellisen, Attorney, Tax Division, were on brief, for
appellee.

January 10, 2006

**LYNCH**, **Circuit Judge**.  As framed by the parties, this case raises a question about whether the Uniform Fraudulent Transfer Act (UFTA), in its Rhode Island incarnation, R.I. Gen. Laws §§ 6-16-1 to -12, restricts a court, in setting aside a fraudulent conveyance, to awarding against the transferee a money judgment that is limited to the value of the property <u>at the time of the transfer</u>.

On May 14, 1992, Rosalina Verduchi and her husband Coriolano ("Cal") transferred their home at 10 Chestnut Street, North Providence, to their son, Dennis, for no consideration.  The problem was that they made this "gift" while they owed the IRS more than $82,000 in taxes and interest, as had been finally adjudicated in court a year earlier.  <u>See</u> <u>Schwartz</u> v. <u>Comm'r</u>, 930 F.2d 920 (9th Cir. 1991) (unpublished table decision).[1]

On March 18, 1993, the IRS issued an assessment against Rosalina and Cal for their tax liability, which by then had ballooned to almost $400,000 because of interest.  A federal tax lien arose on all of the Verduchis' property upon the date of assessment, <u>see</u> 26 U.S.C. §§ 6321, 6322, and in January 1994, the IRS filed its notice of tax lien.

Rosalina and Cal successfully went through bankruptcy proceedings in 1996 and discharged their debts.  But the discharge

---

[1]  The Verduchis and the IRS had agreed to be bound by the outcome of <u>Schwartz</u>, which involved a taxpayer who had participated in the same tax shelter as the Verduchis had.

did not apply to any tax obligation that the debtors sought to avoid by fraudulently conveying property that would have been available to satisfy that debt. See 11 U.S.C. § 523(a)(1)(C). In April 2003, the United States brought suit against Rosalina and Dennis pursuant to 26 U.S.C. §§ 7401 and 7403,[2] seeking to reduce Rosalina's unpaid tax liabilities to judgment, to set aside the transfer of the Chestnut Street property as fraudulent, and to foreclose the federal tax lien against the property.

The government learned in discovery that Dennis, on November 5, 2002, had given a mortgage on 10 Chestnut Street to Option One Mortgage Corporation ("Option One") in exchange for $196,000. It then filed an amended complaint on March 2, 2004 naming Option One as a defendant with an interest. See 26 U.S.C. § 7403(b). Before trial, the government conceded that any federal tax lien on the Chestnut Street property would be subordinate to Option One's mortgage.

In the amended complaint, the government sought, inter alia: (1) foreclosure of its federal tax liens upon and the sale of 10 Chestnut Street pursuant to 26 U.S.C. § 7403 and 28 U.S.C. §§ 2001 and 2002, or (2) money judgment against Dennis for the greater of three possible values -- the current market value of the property, the date-of-transfer market value, or the $196,000 he received from the mortgage, plus interest. Initially, these two

---

[2]     Cal Verduchi died in 1998.

-4-

remedies were sought in the alternative; however, in a pre-trial memorandum submitted to the district court on June 9, 2004, the government stated its intention to seek foreclosure of the lien, as well as a money judgment against Dennis for $196,000, plus interest, representing the amount of the mortgage he had taken out on the property.

After a bench trial on November 8, 2004, the district court held that the transfer of the Chestnut Street property to Dennis was fraudulent, set aside the transfer, and ordered that the federal tax lien should be foreclosed and the property sold. See United States v. Verduchi, No. 03-139-T, 2005 WL 1027017, at *7 (D.R.I. Apr. 25, 2005). The court ordered that judgment be entered against Rosalina for $397,824.16 plus interest accrued since March 18, 1993 (for a total of more than $875,000) and that the proceeds from the sale of the property in excess of Option One's mortgage amount be applied toward Rosalina's unpaid tax liabilities. Id. The court also entered a money judgment against Dennis as transferee in the sum of $196,000 plus post-judgment interest, on the basis that the sum received from the sale of the property would

-5-

be diminished by the amount of Option One's mortgage.[3] Id. Dennis appeals.[4]

## I.

We offer a brief background on how the federal tax laws operate in this arena.

Where the United States seeks to recover a tax debt, it has at its disposal a "formidable arsenal of collection tools." United States v. Rodgers, 461 U.S. 677, 683 (1983); see also Markham v. Fay, 74 F.3d 1347, 1353-54 (1st Cir. 1996) (cataloging various means by which the government can collect from deficient taxpayers). In a fraudulent transfer case, the government can elect, among other options, "to bring an action either to enforce a lien under 26 U.S.C. § 7403 or against the transferee of a taxpayer."[5] United States v. Perrina, 877 F. Supp. 215, 217

---

[3] Dennis has never asserted that he has paid off any part of the mortgage or that Option One's take would be less than $196,000.

[4] While nominally both Rosalina and Dennis are listed as appellants, in fact this appeal concerns only Dennis's challenge to the judgment against him for $196,000.

[5] Section 7403 provides, in relevant part:

(a) Filing.--In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has

(D.N.J. 1994) (citing <u>Rodgers</u>, 461 U.S. at 682); <u>see also</u> <u>Leighton</u> v. <u>United States</u>, 289 U.S. 506, 509 (1933) (noting, among other methods of recovering an outstanding tax debt, "the right of the United States to proceed against transferees by suit").

"The threshold question in . . . all cases where the Federal Government asserts its tax lien[] is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." <u>Aquilino</u> v. <u>United States</u>, 363 U.S. 509, 512 (1960). "In answering that question, both federal and state courts must look to state law . . . ." <u>Id.</u> at 512-13; <u>see also</u> <u>United States</u> v. <u>Craft</u>, 535 U.S. 274, 278 (2002) ("[W]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the

<hr />

any right, title, or interest, to the payment of such tax or liability. . . .

(b) Parties.--All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

(c) Adjudication and decree.--The court shall . . . proceed to adjudicate all matters involved [in the action] and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

federal tax lien legislation." (quoting Drye v. United States, 528 U.S. 49, 58 (1999) (internal quotation marks omitted))); United States v. Murray, 217 F.3d 59, 63 (1st Cir. 2000). Accordingly, in the present case, the question of whether the Chestnut Street property was fraudulently transferred is a matter of Rhode Island law. See R.I. Gen. Laws § 6-16-4; see also United States v. Bryant, 15 F.3d 756, 758 (8th Cir. 1994).

If the government proceeds under 26 U.S.C. § 7403 to enforce a lien, once a court declares a transfer fraudulent and void, the asset reverts back to the ownership of the debtor-transferor and federal law governs the foreclosure of the lien and the selling of the asset. See 26 U.S.C. § 7403(c); 28 U.S.C. §§ 2001, 2002.

In contrast, if the government seeks to recover a debtor's tax deficiency in the form of a judgment against the transferee, state law applies to set the amount of recovery. See Comm'r v. Stern, 357 U.S. 39, 44-45 (1958) (holding, in an action arising under 26 U.S.C. § 6901, which provides the federal government with a procedural remedy against transferees for transferors' tax liabilities, that state law governs the extent to which a transferee can be held liable); United States v. Westley, 7 F.App'x 393, 399 (6th Cir. 2001) (unpublished decision) (holding that state law controls the determination of transferees' liability even if the government does not proceed under § 6901); see also

R.I. Gen. Laws § 6-16-8 (defining the limits on transferee liability).

In the present case, the district court determined under state law that the conveyance of 10 Chestnut Street was fraudulent, set aside the transfer of the property, and issued judgment against Rosalina and the property, pursuant to 26 U.S.C. § 7403, as well as against the transferee, Dennis, for $196,000 plus post-judgment interest. See Verduchi, 2005 WL 1027017, at *7.

On appeal, Dennis does not contest the district court's determination that the property was fraudulently transferred. Instead, he takes issue only with the district court's remedy, arguing that, pursuant to certain provisions of the Rhode Island Fraudulent Transfer Act, R.I. Gen. Laws § 6-16-8(b), (c), "[t]he judgment is wrong because it awards the United States the current market value of 10 Chestnut Street even though the law states clearly that creditors may recover only the value of the asset at the time of the transfer."

Although Dennis does not specify which portion of the judgment he is contesting, we understand him to be appealing only the money judgment against him, not the judgments against Rosalina and the property, for three reasons. First, Rosalina has not contested the amount of her tax liability, which appellants acknowledge is far greater than the current market value of the property. Thus, once the transfer is voided and the ownership of

-9-

the Chestnut Street property is reverted to Rosalina, the government is entitled to force the sale of the property and to collect all the proceeds in excess of Option One's take. See 26 U.S.C. §§ 6321, 6323(a), 7403.

Second, the Rhode Island statute Dennis invokes solely governs transferee liability. See R.I. Gen. Laws § 6-16-8 ("Defenses, liability, and protection of transferee."). Because a judgment pursuant to 26 U.S.C. § 7403 is essentially a judgment against the property, see Rodgers, 461 U.S. at 695 (likening § 7403 to an in rem proceeding), or against the debtor-transferor, not against the transferee, R.I. Gen. Laws § 6-16-8 can apply to limit only the money judgment against Dennis, not the amount the government can recover from the sale of the property.

Further, the government in its brief framed the issue on appeal as "[w]hether the district court erred in entering judgment against Dennis Verduchi for $196,000." The government also noted that "Rosalina raised no defense to the amount of the tax liabilities" -- and by implication to the amount of the lien on the property -- "except for her contention that they had been discharged in bankruptcy." Appellants do not contest the government's characterizations, and we proceed accordingly.

## II.

As to the money judgment against him, Dennis argues that by requiring him to pay $196,000 plus post-judgment interest, the

-10-

district court was essentially penalizing him as transferee by awarding the government the current market value of the property, in violation of certain provisions of the Rhode Island Fraudulent Transfer Act. See R.I. Gen. Laws § 6-16-8(b), (c).[6] He asks that the judgment be reversed or, alternatively, that it be vacated and the matter remanded.

The Rhode Island statute provides, in relevant part:

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor . . . , the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

   (1) The first transferee of the asset or the person for whose benefit the transfer was made; or

   (2) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee.

(c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

---

[6]    Both parties have assumed that this provision governs the outcome of this appeal, an assumption that we will accept for the purpose of argument. We note, however, that the district court did not cite to state statutory authority in the remedial portion of its opinion. We also note that this is not a proceeding under 26 U.S.C. § 6901, and neither the district court nor the parties contends that it is.

-11-

R.I. Gen. Laws § 6-16-8. Subsection (b) permits the creditor, here the government, to recover judgment against Dennis for the lesser of (1) the value of asset transferred, as adjusted under subsection (c), or (2) the amount necessary to satisfy the creditor's claim. At the time of the fraudulent conveyance judgment, the amount needed to satisfy the government's claim was in excess of $875,000.

Dennis admits that the value of the property is less than the amount necessary to satisfy the government's claim. He argues that this means the "whichever is less" sum in subsection (b) requires reference to subsection (c), which is explicit that the judgment "must be for an amount equal to the value of the asset at the time of the transfer," subject to equitable adjustment. The district court failed, he says, to make the needed express finding about the value of the asset at the time of the transfer in 1992. Only after it determined the value of the asset, he argues, could the court adjust for the equities.

There is no doubt the district judge was aware of Dennis's argument about the limitations imposed by R.I. Gen. Laws § 6-16-8(c) on the judgment against the transferee. Dennis advanced this argument at trial.

The government responds that the district court simply made an equitable decision, as permitted under the Rhode Island statute, that in order to make the government whole, Dennis should have to pay back to the government the amount of $196,000 plus

interest to offset the diminishment of the proceeds of the forfeiture sale by what Option One takes. We agree that this is what happened and that there was nothing impermissible about the court's approach.

In the end, Dennis's appeal rests on three propositions. The first is that under R.I. Gen. Laws § 6-16-8(b) and (c), a court must follow a sequence of decisionmaking: before making an equitable adjustment, the court must explicitly make a finding of the value of property at the time of the transfer. Dennis argues that the burden of showing that time-of-transfer value falls on the government, and that the judgment must either be reversed because the government failed to make that showing or at least be remanded to the district court to make such a finding. The second proposition is that the order is contrary to the commentary to the UFTA. The third is that the award cannot be justified on equitable grounds.

The district court cited two Rhode Island cases, Spaziano v. Spaziano, 410 A.2d 113 (R.I. 1980), and Nisenzon v. Sadowski, 689 A.2d 1037 (R.I. 1997), each authorizing equitable adjustment. As the district court noted, Spaziano gave it ample authority under Rhode Island's general equitable law to enter a money judgment against Dennis in addition to a judgment against the property. In Spaziano, the court held that a money judgment against a transferee of a fraudulently conveyed property is permissible "where such

-13-

transferee has disposed of or dealt with the property . . . in such fashion that a return of the property is impossible or in situations in which the property has been diminished in value." 410 A.2d at 115. And in Nisenzon, the Supreme Court of Rhode Island recognized that the state trial courts have wide latitude to craft equitable remedies.[7] See 689 A.2d at 1050.

Nothing in the Rhode Island statute compels the court to make an express finding before addressing equitable concerns. It is commonplace that courts usually need not in their opinions be explicit about every detail of an analysis. See, e.g., Walgreen Co. v. Sara Creek Prop. Co., B.V., 966 F.2d 273, 276-77 (7th Cir. 1992) (stating that a "judge is not required to explicate every detail of the analysis" in determining the appropriateness of injunctive relief).

Spaziano and Nisenzon also lead to the rejection of another of Dennis's arguments -- that the order violated the commentary to UFTA,[8] which states:

---

[7] Although in Nisenzon, the damages award was fixed by the amount of the claim rather than the value of the property, the court approvingly cited the proposition that "equity will not allow itself to be frustrated but will adapt its relief to the exigencies of the case and will enter a money judgment if this will achieve an equitable result." Nisenzon, 689 A.2d at 1050 (quoting Spaziano, 410 A.2d at 115 (quoting Damazo v. Wahby, 305 A.2d 138, 142 (Md. 1973))).

[8] Rhode Island enacted the Fraudulent Transfer Act in 1986, after Spaziano was decided. See 1986 R.I. Pub. Laws ch. 438, § 2. Dennis suggests that the statute displaced the common law (presumably including Spaziano). But Nisenzon, decided after

-14-

> The measure of the recovery of a defrauded creditor against a fraudulent transferee is usually limited to the value of the asset transferred at the time of the transfer. The premise of § 8(c) is that changes in value of the asset transferred that occur after the transfer should ordinarily not affect the amount of the creditor's recovery.

See Unif. Fraudulent Transfer Act § 8 cmt. 3, 7A U.L.A. 654 (2004) (citations omitted).

The UFTA commentary itself only says that the transfer should not "ordinarily" affect the amount of the recovery. This statement is consistent with the approach taken under the earlier Uniform Fraudulent Conveyance Act (UFCA); even under the predecessor UFCA, courts had carved out equitable adjustments. It was for that reason that the explicit equitable adjustment language was added to the successor UFTA. See Dahar v. Jackson (In re Jackson), 318 B.R. 5, 27 (Bankr. D.N.H. 2004).

Often the exercise of the equitable adjustment power is meant to protect the transferee, not the creditor. The law sought to avoid giving creditors the windfall of the costs incurred by an innocent transferee to improve the property. See id. This is similar, as Jackson notes, to a provision of the Bankruptcy Code, 11 U.S.C. § 550(e), which provides to a good faith transferee a

---

enactment of the UFTA, expressly cited Spaziano with approval. See Nisenzon, 689 A.2d at 1044. More importantly, the statute explicitly grants the court authority to make equitable adjustments, whether or not it displaces the common law in some respects. See R.I. Gen. Laws § 6-16-8(c).

lien for improvements on the property.  <u>Jackson</u>, 318 B.R. at 27 n.20.

Here, Dennis is in a vastly different position.  The district court did not characterize him as a particularly innocent transferee, and the sums involved are not claimed to be from improvements he made, but simply cash he took out of the property. Further, Dennis paid nothing for the conveyance of the property to him.  This is not, then, a situation in which Dennis as transferee is in a worse position than if he had never received the property. <u>See</u> <u>Stanko</u> v. <u>Comm'r</u>, 209 F.3d 1082, 1087 n.5 (8th Cir. 2000).  Nor is this an instance where the remedy would result in Dennis's transferee liability being greater than the transferor's liability. <u>See</u> <u>id.</u> at 1087 n.6 (suggesting that it would be "grossly unfair" to impose on a transferee liability greater than that imposed upon the transferor).

The statutory authorization in the UFTA for equitable adjustment does not say it is a one-way ratchet.  In discussing the general provision for equitable adjustment, the commentary explicitly provides protection for the creditor against the diminution of assets by the transferee.  <u>See</u> Unif. Fraudulent Transfer Act § 8 cmt. 3 ("If the value of the asset has been diminished by severance and disposition of timber or minerals or fixtures, the transferee should be liable for the amount of the resulting reduction."  (citing <u>Damazo</u> v. <u>Wahby</u>, 305 A.2d 138, 142

-16-

(Md. 1973))). That equitable discretion can surely be used to avoid an unfair windfall to a not-so-innocent transferee at the expense of an undersecured creditor. That is particularly so when the undersecured creditor is the federal government. Cf. Rodgers, 461 U.S. at 694 (discussing "the policy inherent in the [federal] tax statutes in favor of the prompt and certain collection of delinquent taxes"). Moreover, just as the commentary suggests that a "good faith transferee should be reimbursed" for his contribution "if the value of the asset at the time of levy and sale to enforce the judgment of the creditor has been enhanced by . . . [the] discharge of liens on the property," we see no reason why equity would not allow for a money judgment against a transferee who has decreased the value of the property by encumbering it with a mortgage. Unif. Fraudulent Transfer Act § 8 cmt. 3.

This gets us into Dennis's remaining argument that the result is not equitable for other reasons. The argument is that due to appreciation of the property, the present judgment more likely than not exceeds the sum of any judgment that would have been entered based on the 1992 value of the house even if interest were allowed from the date of the transfer. Further, Dennis argues, it was unfair for the court to hold him liable for the prejudgment interest owed by his parents. He argues that no prejudgment interest can be awarded because the Rhode Island statute does not explicitly allow for it. Even if such interest

could be awarded, Dennis posits, it would run only from the 2003 notice of the IRS's claim against him and be at most a few thousand dollars.

We address his argument about prejudgment interest first. Dennis misunderstands the nature of the district court's judgment against him.  As transferee, he is not personally liable for any prejudgment interest; the only judgment against him is for $196,000, plus post-judgment interest, and that value was set by the mortgage he placed on the property.  The only prejudgment interest accrued was on his parents' debt, and the interest due on their tax liabilities is a matter of federal, not Rhode Island, law.  See 26 U.S.C. § 6601.

As to Dennis's other argument, there are a few responses. One is that it is Dennis who seeks to use the 1992 valuation as a shield against an equitable alteration meant to make the government whole.  But Dennis failed to produce any evidence of that valuation, and thus his arguments are speculative at most.

A second response is that whatever the value of the property now, it is axiomatic that the fraudulent transfer of property does not affect the amount of the lien.  See, e.g., United States v. Bess, 357 U.S. 51, 57 (1958) (noting that "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum

onere'" (quoting <u>Burton</u> v. <u>Smith</u>, 38 U.S. (13 Pet.) 464, 483 (1839))); <u>see</u> <u>also</u> <u>Rogers</u>, 461 U.S. at 701 ("[Section] 7403 . . . gives the Federal Government the opportunity to seek the highest return possible on the forced sale of property interests liable for the payment of federal taxes."). The district court simply used the value of the assessment against Rosalina and accumulated interest to set the underlying debt owed. <u>See</u> 26 U.S.C. §§ 6321, 6601. The tax debt owed by Rosalina was at the time of the judgment, with interest, over $875,000. The debt is large because the Verduchis stalled payment of the taxes they owed for over fifteen years, including a decade after the Tax Court decision determining their tax deficiencies became final.

Even with the entry of this judgment, the United States will likely receive only a fraction of the total sum it is owed. Further, Dennis, who is hardly free from blame, has had the benefit of use of the house for himself and his parents, apparently mortgage-free, until he chose to mortgage the property. Had the property been sold earlier to satisfy the debt, Dennis would not have been in a position to take out the $196,000 mortgage. The effect of the district court order is to try to place the parties into the position they would have been in had no fraudulent transfer taken place. <u>Cf.</u> <u>Rodgers</u>, 461 U.S. at 701 ("[Section] 7403 is intended . . . to reach the entire property in which a

delinquent taxpayer has or had any 'right, title, or interest . . . .'").

Equitable determinations such as these are clearly committed to the trial court's discretion and are reviewed only for abuse of discretion.  Cf., e.g., Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.), 270 F.3d 280, 289 (6th Cir. 2001) (noting that review of bankruptcy court's equitable determinations is for abuse of discretion).  While Dennis disagrees with the ruling, he has not explained why this result is an abuse.  Indeed, the result reached by the trial judge here was entirely sensible.

We affirm the judgment.