T.C. Memo. 2014-128

UNITED STATES TAX COURT

FRANK SAWYER TRUST OF MAY 1992, TRANSFEREE,
CAROL S. PARKS, TRUSTEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 5526-07.                     Filed June 25, 2014.

David R. Andelman and Juliette M. Galicia, for petitioner.

Kevin G. Croke and Yvonne M. Walker, for respondent.

SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge: This matter is before the Court on petitioner's motion

under Rule 161[1] for reconsideration of our Supplemental Memorandum Opinion in

_____

[*]This opinion supplements our previously filed opinion in Frank Sawyer
Trust of May 1992 v. Commissioner, T.C. Memo. 2014-59.

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules
(continued...)

[*2] <u>Frank Sawyer Trust of May 1992 v. Commissioner</u>, T.C. Memo. 2014-59

(<u>Frank Sawyer IV</u>), <u>on remand from</u> 712 F.3d 597 (1st Cir. 2013) (<u>Frank Sawyer</u>

<u>III</u>), <u>rev'g and remanding</u> T.C. Memo. 2011-298 (<u>Frank Sawyer II</u>).  In <u>Frank</u>

<u>Sawyer IV</u> we held that the Frank Sawyer Trust of May 1992 was liable under

section 6901 as a transferee of a transferee but that its liability was limited to the

excess it received over the fair market value of the corporations it sold.  Petitioner

requests that we reconsider and modify the portion of our earlier opinion in <u>Frank</u>

<u>Sawyer IV</u> that relates to the amount of its liability.  Specifically, petitioner raises

three issues relating to its liability:  (1) the start date for its interest liability, (2)

whether its liability should be reduced for income tax it overpaid and estate tax the

Estate of Mildred Sawyer (estate) overpaid, and (3) whether it is liable for the

accuracy-related penalties respondent assessed against the four C corporations.[2]

_____

[1](...continued)
of Practice and Procedure, and all section references are to the Internal Revenue
Code.

[2]The four C corporations are (1) TDGH, Inc.; (2) CDGH, Inc.; (3) St.
Botolph Holding Co.; and (4) Sixty-Five Bedford Street, Inc.

[*3]                    FINDINGS OF FACT

We incorporate our findings in Frank Sawyer II and Frank Sawyer IV and set forth additional facts for purposes of this opinion.

Mildred Sawyer was petitioner's sole beneficiary until she died on March 20, 2000.  For estate tax purposes, her gross estate included all of petitioner's property, including the stock of four C corporations--two taxi corporations and two real estate corporations.  On October 11, 2000, petitioner sold the taxi corporations' stock in two separate sales to Fortrend International, LLC (Fortrend).  The sale prices totaled $32,481,395 although the fair market values of the shares of stock were considerably less.  The estate filed its estate tax return on December 13, 2000, and valued the shares at their inflated sale prices.  Consequently, the estate overpaid its estate tax.

Petitioner received a step-up in basis for the stock of each of the four C corporations when, pursuant to section 2044, their stock was included in Mrs. Sawyer's gross estate.  Petitioner sold the taxi corporations' stock before the estate filed its estate tax return.  When it filed its estate tax return, the estate valued the taxi corporations' shares of stock at their sale prices.  Because the sale prices matched petitioner's stepped-up bases, petitioner did not recognize any gain on the sales.

[*4]  Petitioner sold the real estate corporations' shares of stock in 2001, again for prices exceeding their fair market values.  The sale prices also exceeded petitioner's bases in the shares, which had been stepped up to fair market value at Mrs. Sawyer's death.  On petitioner's 2001 fiduciary income tax return, it reported gains of approximately $14 million on the sales.  The gains resulted in part from the inflated sale prices Fortrend was willing to pay because it anticipated avoiding the corporations' income tax liabilities.

Respondent determined accuracy-related penalties against the taxi corporations and the real estate corporations stemming from their 2000 and 2001 income tax returns, respectively.  The corporations executed closing agreements with respondent in which they admitted their liabilities for accuracy-related penalties totaling $3,983,845.  Respondent has not been able to collect the penalties from the corporations.

We filed our opinion in Frank Sawyer IV on April 3, 2014.  In Frank Sawyer IV, at *17-*18, we stated that a decision would be entered under Rule 155 and held:

> The Trust is liable for the unpaid tax, interest, and penalties of the four C corporations as a transferee of a transferee.  However, because we find the Trust was a good-faith transferee under Massachusetts law, respondent's recovery, apart from interest and

**[*5]** penalties, is limited to the difference between the purchase price and the fair market value of each of the acquired companies.

Petitioner timely filed its Rule 161 motion to ask us to reconsider and modify the portion of Frank Sawyer IV that relates to the amount of its liability.

OPINION

We first address the standard this Court uses to decide whether to grant a Rule 161 motion. We then address petitioner's contentions in turn.

I.      Rule 161 Motion

We have discretion to grant a motion for reconsideration, but we usually do not do so unless the moving party can point to unusual circumstances or substantial error. Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998); see also Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). A motion for reconsideration will be granted if the Court did not give prior adequate consideration to the possible ramifications of its opinion. Estate of Bailly v. Commissioner, 81 T.C. 949, 951 (1983). For the reasons stated below, we will grant petitioner's motion.

II.     Interest and Income Tax Overpayment

Petitioner does not dispute that it owes interest on its liability, and the parties agree that interest began to accrue on December 8, 2006, the date of the

[*6] liability notices. Respondent has agreed to reduce petitioner's liability by the amount of its 2001 Federal income tax overpayment resulting from its overstatement of gains on its sales of the real estate corporations' stock. We modify our earlier opinion to reflect the parties' agreements on these issues.

III.  Estate Tax Overpayment

Petitioner contends that, under the equitable recoupment doctrine, we should reduce its liability by the estate's overpayment of estate tax that resulted from valuing the taxi corporations' shares of stock at their sale prices. The equitable recoupment doctrine "allows a litigant to avoid the bar of an expired statutory limitation period" and "prevents an inequitable windfall to a taxpayer or to the Government that would otherwise result from the inconsistent tax treatment of a single transaction, item, or event affecting the same taxpayer or a sufficiently related taxpayer." Menard, Inc. v. Commissioner, 130 T.C. 54, 62 (2008); see also United States v. Dalm, 494 U.S. 596, 605 n.5 (1990).

To apply equitable recoupment, the taxpayer must prove the following elements:  (1) the overpayment or deficiency for which recoupment is sought by way of offset is barred by an expired period of limitation, (2) the time-barred overpayment or deficiency arose out of the same transaction, item, or taxable event as the overpayment or deficiency before the Court, (3) the transaction, item, or

[*7] taxable event has been inconsistently subjected to two taxes, and (4) if the transaction, item, or taxable event involves two or more taxpayers, there is sufficient identity of interest between the taxpayers subject to the two taxes that the taxpayers should be treated as one. Menard, Inc. v. Commissioner, 130 T.C. at 62-63.

Respondent acknowledges that petitioner satisfies both the first and fourth elements but disputes the second and third elements.

The second element requires the time-barred overpayment to have arisen out of the same transaction, item, or taxable event as the deficiency before the Court. Respondent contends that the estate's estate tax liability and the C corporations' income tax liabilities arose out of different transactions.[3] However, our caselaw explains that income and estate taxes can be imposed on the same "item", although it may be debated whether they are imposed on the same "transaction". Estate of Branson v. Commissioner, 113 T.C. 6, 16 (1999) ("The terms 'single transaction', 'item', or 'event' are not synonymous, and the inclusion of 'item' in this phrase is

---

[3]Specifically, respondent argues that the C corporations' deficiencies arose out of the disallowance of Fortrend's claimed losses, while the alleged overpayment arose from the estate's misvaluation of the C corporations' stock. We disagree. The C corporations had income tax liabilities before the claimed losses were disallowed. Liability was fixed as soon as petitioner sold the C corporations' assets.

**[*8]** significant[.]”), aff’d, 264 F.3d 904 (9th Cir. 2001); Estate of Mueller v.

Commissioner, 107 T.C. 189, 215-216 (1996), aff’d, 153 F.3d 302 (6th Cir. 1998).

In Estate of Branson, the gross estate included stock in its corpus and later

sold it to pay the applicable estate tax. Under section 1014, the stock acquired a

step-up in basis. When the stock was sold, the estate used the stepped-up basis in

calculating the gain on the sale. The gain passed through to the estate’s residuary

legatee, who paid the income tax. The estate and income taxes were both imposed

on the same item: corporate stock. After finding that the taxpayer had

undervalued the stock for estate tax purposes, the IRS determined an estate tax

deficiency. The redetermination of the stock’s basis caused the legatee’s

recognized gain to be overstated and income tax to be overpaid. We concluded

that the estate was entitled to a credit against the estate tax deficiency for the

overpaid income tax.

This case also presents an overpayment arising from a single item: the taxi

corporations’ stock. The estate was taxed on the value of all the property included

in its gross estate, including the stock of the four C corporations. Petitioner sold

the shares of stock, and the estate valued the shares at their sale prices. As the

Court of Appeals determined in Frank Sawyer III, the sale prices exceeded the fair

market values of the taxi corporations’ stock. Therefore, the estate overvalued the

[*9] corporations' stock for estate tax purposes and consequently overpaid its estate tax. The overvaluation resulted from the inflated prices at which Fortrend purchased the stock. Fortrend's overpayment was directly tied to the income tax liabilities petitioner contends should be offset. Therefore, we are convinced the second element is satisfied. We now turn to the third element.

The third element requires petitioner to show that the transaction, item, or taxable event has been inconsistently subjected to two taxes. The two taxes involved here are the estate's estate tax and petitioner's (as transferee) income tax. The estate valued the taxi corporations' shares of stock at their sale prices and paid estate tax on the basis of those amounts. The sale prices would have reflected fair market value only if the corporations could have avoided paying the full amounts of their tax liabilities. Respondent assessed the full amounts of the liabilities against the corporations and is now attempting to assess them against petitioner. He has not offset the liabilities by the estate's overpayment of estate tax attributable to its overvaluation of the corporations' stock. In other words, respondent assessed the estate's estate tax as if the corporations would not have to pay their full income tax liabilities, but he is now attempting to collect the full income tax liabilities. On these facts, we believe the third element of the equitable recoupment test is satisfied.

**[*10]** The equitable recoupment doctrine seeks to prevent an inequitable windfall to the taxpayer or the Government for inconsistent tax treatment. The estate valued the corporations' shares of stock at their sale prices, and it calculated its estate tax using those values. For purposes of demonstrating petitioner's transferee liability, respondent has proved that the sale prices exceeded the fair market values of the corporations' shares of stock. However, respondent seeks to retain the estate tax petitioner paid, even though it was calculated on the basis of the sale prices. Denying petitioner a credit for the estate's overpayment of estate tax would give respondent an inequitable windfall. To prevent this result, we will modify our opinion in <u>Frank Sawyer IV</u> to further reduce petitioner's liability by the amount of the estate's estate tax overpayment resulting from its misvaluation of the taxi corporations' stock.

IV.    <u>Penalties</u>

Petitioner contends that respondent's recovery should not include the accuracy-related penalties assessed against the four C corporations, totaling $3,983,845. In <u>Frank Sawyer IV</u> we did not address petitioner's liability as a transferee for these penalties. We address it now.

[*11]   In Stanko v. Commissioner, 209 F.3d 1082, 1088 (8th Cir. 2000), rev'g

T.C. Memo. 1996-530, the Court of Appeals for the Eighth Circuit addressed

transferee liability for penalties:

> In general, a transferee is liable under § 6901 for the transferor's unpaid taxes and additions to tax in the year of the transfer. See Mizrahi v. Commissioner, 1992 T.C. Memo. 200. But we are not aware of any case applying this principle to a fraudulent conveyance transferee. Because income taxes are paid annually, some months after the end of the tax year, it is logical to consider unpaid taxes in the year of the transfer part of the transferor's existing tax debt. But penalties for negligent or intentional misconduct by the transferor that occurred many months after the transfer, such as penalties * * * for substantial underpayment of the year-end tax liability, are not, by any stretch of the imagination, existing at the time of the transfer. To recover these penalties from a fraudulent conveyance transferee, the Commissioner must prove that the transfer was made with intent to defraud future creditors. * * * [Emphasis added.]

Petitioner sold the four C corporations' stock in 2000 and 2001. The

conduct that gave rise to the accuracy-related penalties (substantially understating

income tax) occurred many months after the transfers. Respondent has not proved

that the transfer was made with the intent to defraud future creditors, and we

accordingly decline to hold petitioner liable as a transferee for the accuracy-related

penalties.

**[\*12]** V.　　<u>Conclusion</u>

Petitioner's Rule 161 motion will be granted.  We modify our earlier

opinion in <u>Frank Sawyer IV</u> in accordance with our holdings stated above.

In reaching our holdings herein, we have considered all arguments made,

and, to the extent not mentioned above, we conclude they are moot, irrelevant, or

without merit.

To reflect the foregoing,

<u>An appropriate order will be</u>

<u>issued, and decision will be entered</u>

<u>under Rule 155</u>.